AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3:19 mj 359
)
CELLULAR TELEPHONE ASSIGNED )
CALL NUMBER (310) 770-6585, )
IMSI 310120161806240 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A - This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 / 846 | distribution of controlled substance / conspiracy to distribute controlled substance |
| 21 USC 843(b) | use of a communication facility, in facilitating the commission of any act or acts |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA CHARLES VILL, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 28, 2019

_____
*Judge's signature*

City and state: DAYTON, OHIO    JUDGE WALTER H. RICE, U.S. DISTRICT COURT
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (310) 770-6585, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310120161806240 | Case No. _____ <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, **Charles Vill,** being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (310) 770-6585, with International Mobile Subscriber Identity 310120161806240, (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered at Overland Park, Kansas. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. Your Affiant is a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation. I have been employed as a Special Agent with the DEA since August 2016. In September 2016, I attended the DEA Academy which consisted of 20 weeks of training in conducting federal drug trafficking investigations, handling confidential sources, conducting undercover operations, conducting mobile, static, foot and electronic surveillance, conducting tactical entry and vehicle arrest operations, defensive tactics, firearms, and additional aspects of conducting DEA lead investigations. I have been assigned to the DEA Dayton Resident Office since April 2017. Prior to employment with the DEA, I was a sworn Law Enforcement Officer of the State of Georgia who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Georgia, and employed by the Cobb County Police Department from December 2011 to August 2016. During my employment with the Cobb County Police Department I was assigned to the Marietta-Cobb-Smyrna Organized Crime Task Force Intelligence Unit (MCS Intelligence). For approximately two years (2012-2014), I was assigned to the Cobb County Police Precinct 3 Morning Watch. I was then assigned to MCS Intelligence from April 2014 to August 2016. My duties included investigations of violations of the Georgia Controlled Substances Act, Murder for Hire, Extortion, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

4. Since the time of my assignment with the DEA, and during time spent as a Cobb County Police Officer, I have been involved in narcotics-related arrests, executed search

warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

5. Through training and experience, your Affiant is aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hardline telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) and (846) (possession with the intent to distribute and to distribute controlled substances and conspiracy to do the same) and 21 U.S.C. § 843 (use of a communications facility to commit a felony) have been committed, and will be committed by an unidentified male using telephone number (310) 770-6585. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of a drug trafficking organization operating in the Dayton, Ohio area led by BRIAN KEITH PAYNE regarding possible violations of 21 U.S.C. § 841(a)(1) and (846) (possession with the intent to distribute and to distribute controlled substances and conspiracy to do the same) and 21 U.S.C. § 843 (use of a communications facility to commit a felony). On June 26, 2019, United States District Court Judge Walter H. Rice in the Southern District of Ohio issued an order that authorized the interception of wire and electronic communications occurring over TARGET TELEPHONE #2 ((513) 975-7435). Interception began on June 26, 2019.

10. On June 26, 2019, PAYNE using TARGET TELEPHONE #2 sent and received text messages to and from an unidentified male (hereinafter UM 6585) at (310) 770-6585 beginning at 4:14 p.m., as follows:

> PAYNE: was the word bro
>
> UM6585: I'm waiting on the feed back
>
> PAYNE: it was only two thangs you know that shit like hot cakes
>
> UM6585: I already know I told em it ain't much around

Based on my training, experience, and knowledge of the case, PAYNE and UM6585 are discussing the availability of drugs. When PAYNE states "was the word bro," he is asking if

4

UM6585 is wanting to purchase drugs. PAYNE relays he has been selling the drugs quickly when he states "it was only two thangs you know that shit like hot cakes." UM6585 agrees that he knows the drugs are selling quickly, and there is not much left.

11. At 5:06 p.m., on the same day, PAYNE using TARGET TELEPHONE #2 called UM6585 at (310) 770-6585. The two continued to discuss the availability of drugs, as outlined below:[1]

> PAYNE: My man. Hey, bro.
>
> UM6585: Hello.
>
> PAYNE: My nigga just hit me, said there's only like four of them left, bruh. Four singles. That's why I was tryin' to get, that's why I try to get bruh to get wit you yesterday, man. Cause I knew it was gonna be, I only brought two bricks, bruh, so there's like four singles left, man.
>
> UM6585: When you gonna get back jumpin?
>
> PAYNE: Shit, uh, I don't know when he gonna come back wit that. They always have...I was callin' you *unintelligible* cause they had the shit that was takin' a two and a quarter. Know what I'm sayin'? But this shit right here is way better and way different, but it's about to be over with. I don't know when he's goin' come back wit it. But they always have somethin', you know what I'm sayin'?
>
> UM6585: I'm literally on my feet back right now I told em to, I told em to make sure, make sure everything, take they time and...
>
> PAYNE: Now I told him to hold them four for me. This right here, this shit right here I told him to hold the four for me, cause I ain't got a chance to make a play. Towards nobody, ain't nobody got a... I ain't got a chance...None of my people will get none of it. Period.
>
> UM6585: So I'm bout to call them...I'm bout to call you right back. *Unintelligible*
>
> PAYNE: I'm just sayin' if you had it, that's for you. That's like sixteen spanks, you get four spanks out of all four of them. That's like half a brick, man, off of four ounces.

---

[1] The conversations set out in this affidavit are based on preliminary transcriptions.

UM6585: " I'm bout to call them right now. I'm bout to call you back.

PAYNE: It's on, bro, it's on.

UM6585: Ok.

12. Based on my training, experience, and knowledge of the case, in the conversation above, PAYNE re-asserts that he does not have a large quantity of drugs left to sale. He states "there's only like four of them left, bruh. Four singles" referring to four ounces of drugs. When PAYNE states "I only brought two bricks" he means that he brought two kilograms of drugs. There are only four ounces remaining for sale. When UM6585 asks "When you gonna get back jumpin?" he means when is PAYNE going to have drugs available again. PAYNE then tells UM6585 that he's not sure when the next shipment of drugs will arrive by saying "Shit, uh, I don't know when he gonna come back wit that." PAYNE then explains to UM6585 that based on the quality of the drugs PAYNE is selling, UM6585 will be able to create sixteen ounces of drugs by mixing a diluting material with the four ounces of drugs: "I'm just sayin' if you had it, that's for you. That's like sixteen spanks, you get four spanks out of all four of them. That's like half a brick, man, off of four ounces." This practice is commonly called "cutting" the drug, and is a tactic used by drug traffickers to create a larger profit margin for the drug traffickers.

13. On January 27, 2019, investigators received subscriber information from Sprint that showed that (310) 770-6585 was subscribed in the name "BOOST MOBILE" at P.O. Box 15955, Lenexa, KS, 66285.

14. In summary, based on training and experience, and the information included above, your Affiant submits that there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) and (846) (possession with the intent to distribute and to distribute controlled substances and conspiracy to do the same) and 21 U.S.C. § 843 (use of a communications facility

to commit a felony) have been committed, are being committed, and will be committed by UM6585 utilizing the cellular telephone assigned call number (310) 770-6585. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses. The requested information will assist law enforcement in identifying the location of the user of the (310) 770-6585 number, which is relevant in confirming the identity of the person using the cellular telephone, as well as locating sources of supply, identifying locations where narcotics are stored, and identifying additional subjects.

15. In my training and experience, I have learned that **Sprint** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily

serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that **Sprint** can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint**'s network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that **Sprint** can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **Sprint** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the

Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct **Sprint** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **Sprint**. I also request that the Court direct **Sprint** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **Sprint**'s services, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **Sprint** for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

9

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Charles Vill
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on June 28, 2019.

HON. WALTER H. RICE
UNITED STATES DISTRICT JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (310) 770-6585, with International Mobile Subscriber Identity 310120161806240, with listed subscriber(s) **"BOOST MOBILE"** (the "Target Cell Phone"), whose wireless service provider is **Sprint**, a company headquartered at Overland Park, Kansas.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **Sprint** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **Sprint**, **Sprint** is required to disclose the Location Information to the government. In addition, **Sprint** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **Sprint**'s services, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **Sprint** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § § 846 & 841(a)(1) (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same); and 21 U.S.C. § 843 (use of a communication facility to commit a felony).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.